Please call the next case. Our next case is 5-140445 W.C. Continental Tire of the Amaericas v. Curtis Holtman. James Keefe, Jr. will be the appellant. Prince, Levenhagen will be the athlete. Counsel, you may proceed. Thank you, Your Honor. May it please the Court, Mr. Levenhagen, my name is Jim Keefe and I represent the appellant, Continental Tire. We believe the Commission decision awarding permanency in this case is contrary to law, not consistent with the Workers' Compensation Act, because there is no AMA impairment rating report providing for some level of impairment. There is a report, though, is there not? There is a report, yes, sir. Mr. Brown, I think his name was, is that his name? Yes, sir. Okay. Now, the Act says that no single enumerated factor will be the sole determination of disability. So there's a report, and it says zero, but they considered it, we know they considered it, and they rejected it. I think, Justice Holtman, before we can get to the five factors in subsection B, subsection A says that the report shall report the level of impairment in writing. We believe this means that there must be some impairment reported. Here, the report says zero percent, which indicates there is no impairment. Where does it say in the Act that they have to accept the report on the question of impairment? Does it say it somewhere? No, it says that there must be a report with a level of impairment. Well, it says there must be a report, reported level of impairment pursuant to subsection A, but then goes on to say that none of the factors are determined. Yes, I agree that's what the statute says, but I don't think that we can get to any of those factors until you first have a report that provides for a level of impairment. So in other words, they must accept the report on the question of impairment or no impairment. They don't have to accept the level, but they must accept impairment or no impairment. That is correct. Where does it say that? What section are you referring to? I'm sorry. I'm talking about section 8.1B, A and B. A and B. Where does it say they must accept it on the question of impairment? Well, it says... We know it says there has to be a report. We've gotten that far. Right. You don't have to repeat that. My question is where does it say they have to accept it? They don't have to accept the number as determinative of disability. I agree with that. But before they can even consider the reported level along with these other factors, it's Continental's position that the report has to say... We understand what your position is by asking where does it say that in the act. It says for accidental injuries that occur on or after September 1, 2011, permanent partial disability shall be established using the following criteria. Right. Physicians licensed to practice has to give a report indicating what the disability, the level of disability is. B says in determining the level that the reported level of impairment pursuant to subsection 8, meaning the report. But it's only a factor for them to consider. It doesn't say they have to accept it. If your argument was there was no report at all, you would have an argument. My question is when you have a report, isn't the commission entitled to reject it? Well, I think our argument is a little different with respect to subsection 8. I think subsection 8 says it is more than just the report. It's a report that says a level of impairment. And in this report it said a level of impairment was zero. But zero is not a level. Of course it is. So you're saying that if instead of going from 0% to 5%, the commission had gone from a reported 5% to 10%, that would be okay. But you're saying 0% isn't a level of impairment, therefore it's not compliant. That is correct because when you read subsection B, it's meaningless unless there is an actual level of impairment, which would be at least 1%. Why is it meaningless if we accept the fact that they can reject the report if they want to because the Act specifically says none of the criteria are determinative? So it occurs to me if you have 1% and the commission gives 5%, that's no different than having zero and the commission giving 5%. They've rejected the report. So if your argument is they must accept the report and whatever level of impairment is in that report they must accept, I'm only asking where does it say that in the Act? No, that's not what I'm saying. I'm saying that before... I understand what you're saying. Okay. You're saying they don't have to accept the report. You've conceded that. But the problem I'm having with that is the claimant goes to a physician, he prepares a report, his honest finding is zero impairment. You're saying as a matter of law he can't report that? It seems to be what you're saying. The report is useless if it's a 0% report. No, I think that fits with the intent of the statute is if there's no level of impairment where they say 0%, no level of impairment, then there cannot be any permanent partial disability. But as long as you have 1%, then they can balance all those other factors against that. But you just said they don't have to consider the report. They don't have to accept the report at zero. It's not binding on them. I think what you're... Okay, just try to clarify it in my own mind. Sure. What you're saying, is the record absent of any impairment? Is that what you're saying? Is there anything in the record that would support a finding by the Commission of impairment, of any impairment? There is not. So your argument is the record is void and it's the claimant's obligation to demonstrate impairment. Is that right? Correct. I mean, it's their burden to prove permanent partial disability. Correct, which would require impairment. Correct. And the record is absent of any competent evidence of impairment, is what you're saying. Or are you saying... That is what I'm saying because... Okay, so we're just on this case. You're not asking us to go beyond and articulate as a matter of law or rule that unless there is impairment under these guidelines, through this section, okay, using these guidelines, that there cannot be a permanent partial disability finding by the Commission, are you? I'm saying that there has to be a physician reporting a level of impairment first. And that's what Brown did here. He reported a level of impairment at zero. Well, just to follow up on what Justice Holdren said, I mean, you are asking us to decide, I believe, that if it's a zero impairment rating, claimant cannot recover anything. For permanent partial disability, yes. As a matter of law. Correct. That is what you're saying. You don't dispute the fact that they did make the findings that are required under B, do you? They do. Well, I don't believe that they should have gotten to B, but yes, I agree. They made all the findings they were required to make. They did not. Oh, I'm sorry. They enumerated everything they considered and then came to the conclusion that it was 5%. That is correct. Now, the one thing I would say is that the statute says, in determining the level of disability, the relevance and weight of any factors used in addition to the level of impairment, as reported by the physician, must be explained in a written order. Now, they did list all the factors. I don't know that the statute is entirely clear on how detailed they have to explain it. I don't believe the statute talks about in addition to the report of the physician. I think the exact reading is, no single enumerated factor should be the sole determination of disability. In determining the level of disability, the relevance and weight of any factors used, in addition to the level reported by the physician, must be explained in a written order. But they did it. I think we understand your interpretation, your opinion as to the meaning and the purpose of this particular enactment. So I have a mundane question for you. Did you bother to check the legislative history to see if there was any underlying the purpose and rationale of the statute? Yes, and I believe the purpose, much like many of the other amendments in September 1 of 2011, was to reduce the cost and values of workers' compensation cases. And I believe that is described... Well, that's the general purpose, but does it say anything about your interpretation that without a minimum level of impairment, the Commission's hands are tied? I believe it does provide that there must be a reported level of impairment. And I guess that's where there's a disagreement here on the interpretation, because if you say report the level of impairment, that suggests that the physician must give some level of impairment. And if you say zero, then there can be no impairment, and you cannot get to address the additional factors against that impairment. Well, the Commission would still consider that, would they not? Zero, I mean, they have to consider it. It's not, as you pointed out, binding. None of these factors are entitled to more or less weight. But to get to those other factors, there has to be a reported level of impairment, which I don't believe is present in this case, because the doctor said there is zero impairment. And then, again, just to reiterate what we were doing around the morning, that means, as a matter of law, there can't be a finding of impairment. That's your position? That is correct.  So, really, it boils down to, what do we mean by level of impairment? Linguistically, in the common, ordinary use of those terms, presumably because it's not defined in the amendments to the statute. Am I correct? That is absolutely correct. So we won't find a glossary that says, level of impairment hereby means this, a doctor's finding above zero. Correct. Okay, we won't find that. That will not say that in the dictionary. Well, we won't find it in the Act, in the amendment. No, it is not. Which is where it should be. I mean, where everybody would like it to be. So now it's up to the courts to define what that means. I believe so, and I believe that if you look to subsection B, the fact that it talks about shall base its determination on the reported level of impairment as one of the factors, I acknowledge, and it says no single factor is the sole determinant, but then they go on to say, in determining the disability, the relevance and weight of any factors, presumably they're referring to those other four, and in addition to the level of impairment. So I think that what the legislator's real intent was here to say, let's bring these ratings into play, and as long as somebody says there's some level of impairment, then we'll balance that level of impairment against these additional issues. So essentially it is the gatekeeper. And isn't that what the arbitrator did here? I mean, he balanced those other factors against the reported level of zero percent impairment. And then we're back to the full circle, where it's just the zero and up. Okay. What you're saying is, and it's gatekeeper, as you use it metaphorically, we all use that. Yes, sir. The gate never opens unless you get above zero. That is correct. That is what you're saying. Or the ballgame's over if you don't get above zero. So there's no balancing. The gate never opens to go and balance other factors, use discretion and a disposable expertise of the commission in their unique capacity to evaluate these things. That is correct. I agree that when you get to B, everything comes into play. Right. But I say you can't get to B. That's right. So it does boil down to how do we interpret that impairment, level of impairment. Yes, sir. Now, before the gate closes on your argument, so to speak, assuming the off chance, the slim chance we don't agree with your argument about the statutory interpretation, do you have anything to say about the manifest wit of the evidence? I do, Your Honor, and I saw the light just went off. That's why I wanted to ask. Wait until it's red, and then we'll tell you. Okay, thank you. That's why the gate really closes on us. In this situation, I don't believe that the commission explained how any of the other four factors led to a determination of 5% of the band. They inserted another factor. They said the claimant described some minor residual symptoms in his wrist, so he had residual injury. They considered that also. Now, it doesn't say that their consideration is foreclosed by only these four things, do they? That's right. It says the relevant of any factors. Yes, and so they considered something else. In fact, they listed out five factors when the act only has four, I guess. Well, I think the act has five. If you're talking about corroborating by treating medical records, they talked about his description of his residual symptoms, not his medical records. That is correct, because I think it says, yeah, evidence of disability corroborated by treating medical records. Right, but they considered also his description of his residual symptoms. That is correct. They did put that in there, but I don't think they explained how that equated to 5%, is my point. I think all those other factors, their age, they didn't say, and frankly the statute doesn't really give us any direction or give the commission any direction on what age means. They don't really give you any direction on how occupation applies to determining the level of disability. They don't give you any indication on the future earning capacity. In fact, the statute makes provisions, if somebody has a loss of earning capacity, we have wage differential. We have AD2 for loss of certain occupations, where it doesn't rise to a wage differential. So, I mean, they just list these factors without giving any true direction to the commission on how to apply them. And here, there's just, other than some occasional soreness, there's absolutely no objective evidence that there's anything wrong with this individual's wrist, and for that reason, even on manifest weight, we still believe it should be a zero. Okay, your time is up, and you'll have time to reply. Thank you. Counsel, you may respond. My name is Fritz Levenhagen, and I represent Curtis Hultman. May it please the court, counsel. Well, in this case, the arbitrator reviewed Section 8.1b of the Act, which states that permanent partial disability shall be established by using the following criteria, and under A, it says that physician licensed practice... You know what it says, counsel? His argument is that if no physician gives a residual report, then in that particular case, there can never be permanent partial. That's what the issue is. Yes, and I think... I beg your pardon. So, what I think, if I understand it, I'm a little bit confused by the briefs, but what I think my opponent is arguing is that zero percent impairment equates to no report at all. No, no, not no report, no residual. No residual, okay. So, if he says there's no... zero percent is no residual impairment. Why do we say residual anyway? I don't know. I don't know either. Why don't we talk about impairment? Impairment. So, here we've got... We're talking about permanent partial disability, so it should be impairment. So, one of the factors, or the five factors, is the level of impairment. Level of impairment. In this case, there was a zero percent. So, there's a zero percent level of impairment that should be considered, along with the other four factors, in a determination as to the permanent partial disability. Now, what he, I believe, is saying, zero percent means there's no impairment, therefore it disappears. Well, if you buy a car and you get zero percent financing, it doesn't mean you didn't get financing. It just means that your percentage was zero percent. Let's say you're a bodybuilder, and as part of the bodybuilding requirements, you have to show what your percentage of body fat is. And so the bodybuilder goes and he's tested, zero percent is what the test is. He'd be in pretty good shape, then, wouldn't he? He would be in great shape, but there's some downside to that, too. Physiologically. So, zero percent means, look, here's what my level is, zero percent. Well, you can't go to the bodybuilding competition because you didn't produce your level of body fat. Yes, I did. It's zero percent. So, you can deny the bodybuilder the right to participate in the competition because he has zero percent body fat. If you have zero percent body fat, he's going to say you have no body fat. I understand. Okay, so unless you have zero percent financing. Yes. We're talking about the interest charged on the amount loaned. Yes. And so that would be no interest charged on the amount loaned. You'd still get the loan. Correct, but there is a downside to that as well. Okay. So, let's say that my law firm, that I work for a huge law firm, and that law firm required that when I purchase a car that's to be used under the company name, it has to have financing. They are not going to allow me to have a car without financing. That's one of the requirements. I have to be an employee of the firm and I've got to have financing. And I come in with my car and I say, look, I've got zero percent financing. And they say, well, you can't have the car because you didn't get financing. Okay. Well, yes, I did. I got zero percent. I could have got a better deal if I would have had cash back, let's say. Let's say they offer me $5,000 cash back. And I showed up and said, look, I got cash back. It's a better deal. Well, then I could see how they could say, well, you can't have that because you didn't have any financing. I'd say, you're right. I didn't have any financing so I don't get the car. But here I've got zero percent financing. Isn't that great? Yes, counselor, you've met it. Now you get to keep the company car. So, in this case, Mr. Altman received a zero percent impairment. And then the arbitrator took that into consideration with the other factors to determine that his percentage of permanent partial disability was five percent. What it boils down to is that under the statute there's a difference between the physician's report of impairment and the commission's determination of permanent partial disability. And Mr. Keefe's argument would make them one and the same in a case where the report is for zero percent. Correct. That's what Mr. Keefe's argument is. But Mr. Keefe didn't include this within the statute. He was not a legislator and didn't write that into the statute. What do you have to have to be permanently partially disabled? What does the state of the claimant have to be? Pardon me? The state of the claimant has to be some residual complaints. You can't use the word residual. Oh, I'm sorry. Justice Aldrich doesn't like that. I don't like that. Currently, at the time of arbitration, the petitioner would testify that he had some ongoing difficulties in the performance of his daily activities. And that would be a consideration in permanent partial disability because it affects his daily activities. The statute says that the determination of permanent partial disability shall be established using the following criteria. So this is the criteria that the commission must use in order to award permanent partial disability. The question becomes, when the report says there is no permanent partial disability and your financing argument doesn't fit the bill because in financing you still owe him some money and that's why you got financing. You're right, it is zero, but you owe him the money. In this particular case, you've got a report that says he has no permanent partial impairment. And that's in the report, zero. And so your opponent is saying once that happens, you don't go any further. There has to be something. Now, they can change the numbers if it's there, but if it's not there at all, you can't have it. Now, the question is, is that what this statute means? Or can they reject the report totally and decide it based on something else? Okay, I'm sorry. I think you asked two questions. I think you started asking a question. I'm not sure. Well, you want me to repeat it? No, I don't want to burden you with that. I'm not burdened. Okay. I think the question is, can the commission reject the report? Yes. You can reject the report. Sure. Now, can the commission reject a report that says no impairment at all is what your opponent is arguing? They can't reject that. If there's no impairment at all, the inquiry stops. That's what his argument is. Why do you say it continues? Because the commission determines the weight. And in this case, the weight was zero. And the other reason is because no single factor should be the sole determinant. So if one of the factors is zero, then you look at the other factors. Who is to get this report? Whose responsibility is it? To get it? Yeah. You mean to go out and physically get it? It says we've got to have a licensed physician here to prepare this permanent partial disability report. It doesn't matter. Huh? It doesn't. It could be either side. I mean, the statute doesn't say. Well, okay, who got the report here? What do you mean by get it? You paid the doctor to do this. Okay, okay. I mean, that's a game change just because of that legislation change. Who bought the report? They bought the report. Why didn't you buy one? I didn't want to buy one. We're back to financing. I get it. Because it's zero. I didn't have to buy one. He got zero percent financing. I got zero percent financing. I didn't have to buy one. But in the long picture here, if indeed you got one that says zero over here, okay? Yes. Normally it would be the respondent, right? Yes. Telling me there isn't a doctor there that's going to find one, two, three, or five percent doing the same report? I'm not saying that. So you're doing the same section here in this? Yes. I'm not saying that I agree with Brown's zero percent. Correct. But all I have to make sure is that it is in the record, right? So if they buy it and I put it into evidence, then I have satisfied my requirement that a physician's report with a level of impairment is in the record. In all seriousness, why would you want to put one in that says zero? Because it's required by the statute that one be there. Why wouldn't you put one in that's five? Because I don't have money to buy one. I wanted an answer. I'm back to my answer. It's a matter of financing. He doesn't have the money. It's a matter of financing. Can I ask a question? Assuming that we accept the fact that Brown's report is the only report in the record that establishes the level of impairment, be it residual or not, what evidence is there in the record that he had any impairment? Impairment? Yes. Permanent partial disability. Disability? Or are you saying impairment? That's partial disability impairments in the statute. Well, yeah, that's kind of ‑‑ We just answered the question. What evidence is there in the record that the man had any permanent partial disability impairment? Okay. His continuing complaints of symptoms as they affect his ongoing daily activities. Well, it seems as though stacked up against a physician's report that he has absolutely no permanent partial disability impairment, the only thing the commission found was that he described some minor residual symptoms in his wrists. I beg your pardon. He would have to do that and they would have to be corroborated by the medical records. But this is the only reason that the arbitrator gave. I'm looking at it right now. Yes. Well, Dr. Brown also testified that he had a bone chip that had not reattached the last time he saw him and sometimes they never reattach. And Dr. Brown also expressed the opinion that he would probably continue to have some, sorry, residual symptoms. So, and he testified that he did have those things. There was a fracture and it broke part of the bone in the wrist and he testified as to the continuing difficulties he was experiencing at times of arbitration. What is it meant by this section of the act that says that it must be explained in a written order? There is no explanation in this written order that they found 5% because of a bone chip or anything other than the claimant described some minor residual symptoms. Is there? Well, when the arbitrator, in his decision rights, the petitioner continues to work his pre-injured position, he notes occasional discomfort in his left wrist, but continues to engage in recreational activities, including a form of handicapped golf game. He, so he testified about his occasional discomfort in the left wrist. And there was more detail in the actual record about the difficulties. Yes, but I'm only raising the issue that the act specifically says that it must be explained in a written order. Yes. And the explanation on nature and extent pursuant to Section 8.1b is contained in the arbitrator's report that was adopted and it doesn't make mention of any of that stuff. It makes mention of only, the only factor in support of permanent partial disability in this report is number 5. The claimant described some minor residual symptoms in the wrist. None of the rest of it supported at all. The claimant, the petitioner had a fracture to the wrist. That's an explanation. He, yeah, and there was a 5% award of permanent partial disability to the left. That was an explanation. Is that in the written section under 8.1b in the arbitrator's report? Oh, no, no, not in the fore, but he goes on to explain it in the next paragraph. Petitioner had a fracture to the wrist, which was explained? Yes. He worked light duty, engaged in home exercise, and had minimal treatment. Yep. Released MMI 30 days later, given the above, and considering the totality of the evidence induced by the respondent, she'll pay to the petitioner the sum for 5%. 5%. Okay. Not a lot of money. What is it? What is it that they relied on? They relied on the fracture to the wrist and the minor residual symptoms. And that overcame the expert medical opinion of zero. Well, if the zero wasn't there, maybe he would have got 10%. I don't know. It was supposed to be, as I recall legislative history, there was supposed to be, a concern was addressed about consistency. There had to be some consistency, so we needed to have certain factors. And they used the AMA as one of the factors. We're trying to remove the finger in the wind variation in decision, right? That's a legal term. I didn't go to the University of Chicago. I'm sorry. I don't know what the finger in the wind is. But if you have any other questions, I'd be happy to address them. It's a great pleasure. Thank you very much. I appreciate it. Thank you, counsel. Counsel, you may reply. Mr. Keefe, I have a question. Yes, sir. It seems to me in sitting here reflecting on the efficacy of your argument, if what you say is true, if the physician's report is at zero percent and that's the ballgame, according to you, you go no further, then wouldn't, in essence, the legislature place the matter totally in the hands of a single physician and then he makes the decision or she makes the decision? The commission then really doesn't decide the case, then, does it? No, I don't believe so because I was thinking about, as you were asking Mr. Levenhagen questions, what if we have a situation where there's a zero percent and a five percent? So each party gets a rating. That five percent gets us down to B. And then the commission can weigh that zero percent. But it's not what happened here. We're deciding this case. You're saying that if it comes in at zero and that's the only physician's report, that's the ballgame, correct? That is correct. So the doctor decides the case. What role does the commission have then? Let's say you're entitled to that. The commission has no discretion. They say you consider these factors. You say you don't get to, you know, your intuitive appeal is you don't get past zero. Therefore, the case is over. The commission has no discretion, correct? Right, and that's what the legislature intended was that the burden was on the petitioner to prove some type of impairment. And the first way to prove the impairment or the first way you must prove the impairment is to get the report. Does it make sense to you that if there's the physician's report says he has a .1 level of impairment and the commission gives him five percent, is that fundamentally different than if the commission says he has a zero impairment and the commission gives him five percent? It is. There's no difference. There is. Why, you're saying because there is impairment? Because the doctor says there's impairment. That is correct. So that means the doctor's report has his finger on the scale. Correct. It's the doctor's report that tips the scale one way or another. It gets you in the door. But it doesn't say that. It does because it says you have to have the report stating a level of impairment. And you must get a report that states a level of impairment. He got one. Or there is one. It says zero. There is a report. It is a report, but it doesn't state a level of impairment. Yes, it says zero. But that's not a level. It's not? I don't believe so. Your interpretation of this would run counter to really every other provision of the act where the commission is the fact finder and has the discretion to make these determinations. Put another way, is there another provision of the act that limits the commission's exercise of discretion in a similar way, according to your interpretation? Well, in terms of where it says something shall be done in the act. Well, notice is the first one. Right at the beginning of the case. The statute says the commission can't act unless there is notice. And they define what notice is. But in terms of its ability to either credit or discount expert opinions, is there any other provision in the act that would limit its ability to do so? No, I don't think that there is medical evidence where an employee has the burden of proving medical treatment is reasonable, necessary, and causally connected. But, yes, the commission weighs that testimony in every single case. So put another way, what role would the commission have in this case where it's a zero percent finding disability? What, in your humble opinion, that is the commission's role in this case? To say that he's not entitled to, or she, in this case he, to any permanent partial disability. And the doctor, again, decides the case, in essence, correct? In this case, because nobody came forward with a rating saying that there was some level of impairment. Okay. Basically, this whole thing is a creature of legislative anathema. This whole statute. Absolutely. And if they wanted to write it to have the effect that you wanted, it could be very simple, couldn't it? Which says, you can't bring a claim for PPD unless you, the claimant, bring in this section and show that you have greater than zero percent impairment. Pretty simple language across the street. Well, I think that's what that... It does not use the word zero. I concede it does not use the word zero. Yeah, that's what I'm saying. To get to where you want to go, it could be written to get to where you want to go, and it could be done constitutionally by the legislature. And we would have to, the commission would have to apply that law, am I correct? Unless it were to be found unconstitutional by that further court down the street. Yeah, that says that the statute is just... That is in derogation of the whole act. But that isn't here, is it? Well, the legislature can always change the language. But I believe what the intent was here is that it has to be greater than zero on the impairment report. Wouldn't it be easier for you, I mean, as a respondent's counsel, to say, claimant, you come in and want PPD from my client. You've got to come in here with this type of report with greater than zero. To use that precise language, would that make it easier? Yeah. Yes. Of course it would. Of course it would. But we... Okay, all right. I know the red light is off. It is. I've taken up your time. But it must be very disappointing to have a zero percent report and the arbitrator still makes an award. I wouldn't say that even necessarily. I mean, I think there are cases where there can be a disagreement over the actual percentage. But I think there's got to be some percentage greater than zero to get there. Okay. Thank you, counsel, both, for this interesting case and your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue.